IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OHIO & VICINITY CARPENTERS' FRINGE BENEFIT FUNDS, INC., | CASE NO. 1:24-cv-995 |
| Plaintiff, | DISTRICT JUDGE DAVID A. RUIZ |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| BUNTING GRAPHICS, INC., | |
| Defendant. | **REPORT AND RECOMMENDATION** |

Pending before the Court are the motion and supplemental motions for default judgment and related damages filed by Plaintiff Ohio & Vicinity Carpenters' Fringe Benefit Funds, Inc (the "Fund"). Docs. 9, 15, 17. The Court referred to me these motions for a report and recommendation. Doc. 11. For the reasons explained below, I recommend that the Court deny, without prejudice, the Fund's motions.

**Background**[1]

The Fund, an Ohio corporation, administers funds under a Collective Bargaining Agreement that was entered into between Indiana/Kentucky/Ohio Regional Council of Carpenters (the "Union") and certain employers and employer associations. Doc. 1, at 1–2. Bunting Graphics is a Pennsylvania corporation that performs construction work. *Id.* at 2, ¶8(a).

---

[1]     The background facts are taken from the Complaint, Doc. 1, and items that the Fund submitted with its motion for default judgment, Doc. 9.

In 2008, Bunting Graphics signed a Memorandum of Agreement with the "Indiana/Kentucky Regional Council of Carpenters." Doc. 9-3. In this agreement, Bunting Graphics agreed to be bound by the then-existing collective bargaining agreement for work it performed in Indiana, Kentucky, and certain counties in Tennessee. *Id*. The agreement does not mention Ohio. *Id*.

Meanwhile, at some unidentified time, an entity called the "Indiana/Kentucky/Ohio Regional Council of Carpenters" adopted a new Collective Bargaining Agreement. Doc. 15-1. This Collective Bargaining Agreement, effective from 2023 through 2027, covers work done in certain Ohio counties. *Id*. at 1, 4. Bunting Graphics did not sign this Collective Bargaining Agreement. Doc. 1, at 2.

Also at some unidentified time, Bunting Graphics submitted a bid for work on a construction project in Ohio. Doc. 1, at 2, ¶8(a). The bid was accepted. *Id*. The Ohio project required the bidder to use Union labor. *Id*. In August 2023, Bunting Graphics used Union labor for the Ohio project and paid to Union members their wages in accordance with the Indiana/Kentucky/Ohio Regional Council of Carpenters' Collective Bargaining Agreement. *Id*. at 3, ¶8(b),(d),(e). When the Fund demanded from Bunting Graphics the Union members' fringe benefit contributions, which the Collective Bargaining Agreement requires employers to pay, Bunting Graphics did not pay and advised that it was not bound by the Collective Bargaining Agreement. *Id*. at 4, ¶10.

2

The Fund filed a Complaint in this Court alleging that Bunting Graphics's failure to pay fringe benefit contributions violated the Collective Bargaining Agreement and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1145 (ERISA). Doc. 1, at 5. It also cites the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (LMRA). *Id*. at 1, 4. Bunting Graphics did not respond to the complaint or otherwise appear in this lawsuit. So the Fund filed an Application to the Clerk for entry of default under Federal Rule of Civil Procedure 55(a), Doc. 6, which the Clerk entered in August 2024, Doc. 7.

In December 2024, the Fund filed a motion for entry of default judgment. Doc. 9. In its motion, the Fund asked the Court to order Bunting Graphics to submit to an audit to determine the amount of contributions Bunting Graphics owed for work performed from August 2023 to October 2023. *Id*. at 2–3. The Court found that the prerequisites for default judgment were met but did not find liability. Doc. 11. The Court referred to me for a report and recommendation the Fund's motion for default judgment, including, if necessary, holding a hearing on damages and "to otherwise investigate any matters necessary to resolve the claim." *Id*. I granted the Fund's audit request, and instructed the Fund to thereafter file a supplemental motion detailing its request for damages. Doc. 12. The audit was completed, *see* Doc. 14, and the Fund filed a supplemental motion requesting damages totaling $68,699.69, Doc. 15. These damages include $52,736.69 in unpaid fringe benefit

contributions, $7,910.50 in liquidated damages, $7,542.50 in attorneys' fees, and $510.00 in costs. Doc. 15, at 5; Doc. 15-3. I advised the Fund that the materials it used to support its attorneys' fee request were insufficient, Doc. 16, and it filed a supplemental motion to cure the deficiencies, Doc. 17.

**Legal Standard**

Federal Rule of Civil Procedure 55 governs default and default judgment. Here, the Clerk has entered default under Rule 55(a). Doc. 7. "Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments." *Renouf v. Aegis Relocation Co. Corp.*, 641 F. Supp. 3d 439, 444 (N.D. Ohio 2022) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006)). But "legal conclusions in the complaint are not deemed admitted by a defendant's default." *Renouf*, 641 F. Supp. 3d at 445. A court must therefore "determine whether the factual allegations in the complaint," which are deemed admitted, "and reasonable inferences derived therefrom, are sufficient to satisfy the elements of [the plaintiff's] legal claims for which [it] seeks default judgment." *Id.* (citing *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016), and *Kwik–Sew Pattern Co. v. Gendron*, No. 1:08-cv-309, 2008 WL 4960159, at *1 (W.D. Mich. Nov. 19, 2008)).

Also, damages allegations are not deemed admitted. *See Painting Indus. Funds v. Indus. Painting & Rigging*, No. 1:24-cv-886, 2024 WL 5075167, at *2

(N.D. Ohio Dec. 11, 2024) (collecting cases); *Renouf*, 641 F. Supp. 3d at 448. Rather, damages allegations must be proved. *See Painting Indus. Funds*, 2024 WL 5075167, at *2. Where, as here, damages are not certain, a party must move the Court under Rule 55(b) for default judgment. Fed. R. Civ. P. 55(b). A Court may conduct a hearing or enter default judgment on damages without a hearing. *See* Rule 55(b)(2); *Renouf*, 641 F. Supp. 3d at 445.

**Analysis**

*A. The Fund has not shown that it is entitled to default judgment as to liability*

In the Complaint, the Fund, a third-party beneficiary of the Collective Bargaining Agreement that covers certain counties in Ohio, alleges that Bunting Graphics worked on an Ohio construction project, which required it to use Union labor. Doc. 1, at 2, ¶5, 8(a). But Bunting Graphics didn't sign the Collective Bargaining Agreement that the Fund seeks to enforce against it. Bunting Graphics only signed in 2008 a Memorandum of Understanding with the "Indiana/Kentucky Reginal Council of Carpenters"—an agreement with a different-named entity that did not cover work in Ohio. Doc. 9-3.

The Fund concedes that "Defendant Bunting did not sign a Collective Bargaining Agreement with the Union," but alleges that Bunting Graphics "is bound to the terms of the Collective Bargaining Agreement by its actions." Doc. 1, at 2, ¶6. The Fund identifies these actions as follows: Bunting Graphics bid on the Ohio project, which it knew required Union labor; it requested in August 2023 a Union apprentice, and in its request stated that "it was a contractor

'who is signatory to a current collective bargaining agreement with the Indiana/Kentucky/Ohio Regional Council of Carpenters'" and "'agree[d] to abide by the rules and procedures established by [the Union's] Committee'"; Bunting Graphics requested the Collective Bargaining Agreement and the wage rates for Union members; and it paid Union members wages consistent with the Collective Bargaining Agreement. *Id.*, at 2–3, ¶8(a)–(e). The Fund alleges that by performing these acts, Bunting Graphics "assumed the contractual obligations under the Collective Bargaining Agreement." *Id.* at ¶8.

In support of its legal conclusion that Bunting Graphics's actions alone created liability under the Collective Bargaining Agreement, the Fund states:

> A non-signatory employer may be bound to a collective bargaining agreement even without signing it where (1) a non-signatory has incorporated the arbitration agreement by reference; (2) where a non-signatory has assumed contractual obligations under the contract; (3) where traditional agency principles so require; (4) where veil-piercing/alter ego theories so require; or (5) where theories of equitable estoppel so require. *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003).

Doc. 1, at 2, ¶7. The Fund cites no other legal authority for its *assumed contractual obligations* theory and does not advance any other legal theory for Bunting Graphics's liability.[2] *See* Doc. 1, at 2; Doc. 15, at 2.

---

[2]    In its Supplemental Motion for Default Judgment, the Fund states that Bunting Graphics "was bound to a Collective Bargaining Agreement with the OHIO & VICINITY CARPENTERS' FRINGE BENEFIT FUNDS, INC. by assumption" and cites the Ohio Collective Bargaining Agreement and the Memorandum of Agreement. Doc. 15, at 2, ¶3. But Bunting Graphics did not

But *Javitch*—the only authority that the Fund cites—is not an ERISA or LMRA case and it doesn't involve a union or a collective bargaining agreement. *Javitch* instead dealt with the Federal Arbitration Act in a non-labor, commercial dispute. 315 F.3d at 624. The court in *Javitch* stated that "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles" and listed the "[f]ive [recognized] theories for binding nonsignatories to arbitration agreements." *Id*. at 629. The Fund has not explained how the *assumed contractual obligations* theory for nonsignatories to arbitration agreements mentioned in *Javitch* would apply here, to this labor case, and it hasn't cited any labor cases applying this theory. My research hasn't uncovered a case, either. Simply put, the Fund hasn't cited an applicable legal theory showing that non-signor Bunting Graphics can be found to have assumed the contractual obligations of the Union's Collective Bargaining Agreement solely by its actions—which is what the Fund alleges. *See* Doc. 1, at 2–3.

In short, whether Bunting Graphics was bound by the Collective Bargaining Agreement through its admitted actions is a legal conclusion, not a factual allegation. So Bunting Graphics did not by virtue of its default admit

---

sign the Collective Bargaining Agreement. Further, the Union wasn't a party to the Memorandum of Agreement and the Memorandum of Agreement doesn't cover Ohio. The Fund has not explained how these two documents could or should be read together to create liability for Bunting Graphics in this case. Indeed, after making this statement, the Fund reiterates its assumption-by-action theory. *Id*. at ¶4–5.

this legal conclusion. This means that the Fund has to show that its legal conclusion about Bunting Graphics's liability holds water. But it has not done so. I therefore recommend that the Court deny the Fund's Motion for Default Judgment as to liability, without prejudice.

   2.    *The Fund has not proved that it is entitled to the damages it seeks*

The Fund must prove its damages allegations to recover the amount it seeks on default judgment. *See Painting Indus. Funds*, 2024 WL 5075167, at *2. Without a showing that Bunting Graphics was bound by the Collective Bargaining Agreement, the Fund may not recover from Bunting Graphics damages under that agreement. Even if this Court were to find that the Fund established Bunting Graphics's liability, the Fund has not proved that it is entitled to the damages it seeks.

In support of its assertion that it is entitled to "unpaid fringe benefit contributions and deductions" from August 1 through October 31, 2023, the Fund provides a one-page document that it calls the "Bunting Audit Report." Doc. 15, at 7; Doc. 15-3. This document is unauthenticated. It appears to be a summary conclusion and there is no accompanying explanation of the methods the auditor used to calculate the damages. This document is therefore insufficient to prove damages. *Cf., Loc. Union 5 Trs. of Bricklayers & Masons' Ohio Pension Fund v. United Masonry Constr. Co, LLC*, No. 5:22-cv-406, 2023 WL 6554174, at *2–3 (N.D. Ohio July 28, 2023) (finding that the plaintiff showed it was entitled to default judgment for an amount of delinquent fringe

8

benefit contributions when the plaintiff provided an affidavit from the plan administrator explaining the contributions due, a copy of the audit report, and the auditor's explanation for how he made the calculations), *report and recommendation adopted*, 2023 WL 5662613 (N.D. Ohio Sept. 1, 2023).

Liquidated damages are recoverable under a Collective Bargaining Agreement. *See, e.g., Bricklayers Pension Tr. Fund v. Rosati, Inc.*, 23 F. App'x 360, 362 (6th Cir. 2001). In support of its 15 percent liquidated damages request, the Fund relies on a provision in the Collective Bargaining Agreement. Doc. 15, at 5, ¶17. And it cites the one-page audit summary, which shows "$7,910.50" as total liquidated damages. Doc. 15-3. Review of this document shows that the auditor calculated this number by applying an across-the-board 15 percent liquidated damages penalty on $52,736.69, the total amount of damages. *See id.*

But the Collective Bargaining Agreement provision that the Fund cites doesn't provide for an across-the-board 15 percent liquidated damages assessment. The relevant provision in the Collective Bargaining Agreement states:

> **24.13 Delinquency Penalties**. Any Employer who is delinquent in making its payments as herein required or who fails to file an accurate and acceptable monthly report by the fifteenth (15th) day of any month shall be charged a delinquency assessment of ten percent (10%) of the amount due for the first (1st) week or first (1st) month, as the case may be, and five percent (5%) for each week or month thereafter.

Doc. 15-1, at 4. So a flat-rate 15 percent penalty for all damages, which the auditor assessed, is not consistent with the Collective Bargaining Agreement, which provides for an initial 10 percent penalty. If a flat-rate 15 percent liquidated damages calculation was warranted, the Fund hasn't explained why this would be so.

In sum, I find that the Fund has not proved that it is entitled to the damages it seeks.[3]

### 3.    Attorneys' fees

"To determine reasonable attorney fees, the Court uses the 'lodestar' method: it calculates 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *See, e.g., Loc. Union No. 5 Trs. of Bricklayers & Masons', Ohio Pension Fund v. Masonry Contracting Corp.*, No. 1:19-cv-1273, 2021 WL 243187, at *11 (N.D. Ohio Jan. 25, 2021). Because the Fund did not initially provide itemized billing records for the Court to determine whether its fee request is reasonable, I ordered it to supplement its fee request. Doc. 16. The Fund has done so. Doc. 17. But given the deficiencies in the Fund's motion and supplemental motions for default

---

[3]    Given my recommendation as to liability, I have not held a hearing on damages. *Cf. Ohio v. Roberts*, 448 U.S. 56, 74 (1980) ("The law does not require the doing of a futile act."), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004). In the event that the Court does not accept my recommendation as to liability, I will need to hold a hearing to determine the amount of damages.

judgment, described above, I find that a calculation of attorneys' fees is not warranted at this time.

**Conclusion**

For the reasons explained above, I recommend that the Court deny, without prejudice, the Fund's motion and supplemental motions for default judgment, Docs. 9, 15, 16.

So ordered.

Dated: September 2, 2025

                               */s/ James E. Grimes Jr.*
                               James E. Grimes Jr.
                               U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).